824742

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Victor M. Javitch, Receiver       )
c/o Javitch, Block & Rathbone    )
1300 East Ninth Street, 14th Floor  )
Cleveland, Ohio 44114-1503    )
                                     )
         Plaintiff,            )
                                     )
        vs.                   )
                                     )
Charles Thornburgh           )
7950 Indica Court             )
N. Charleston, South Carolina 29418  )
                                     )
         Defendant.          )
                                     )

CASE NO.
**1:04CV0323**
JUDGE DAVID A. KATZ

**COMPLAINT**

Now comes Plaintiff, Victor M. Javitch, in his capacity as the Federal Court appointed Receiver for Liberte Capital Group, pursuant to Rule 66 of the Federal Rules of Civil Procedure, by and through undersigned counsel, and brings suit against Defendant, and for cause states:

**JURISDICTION AND VENUE**

1)    This case arises from a dispute between Plaintiff and Defendant that concerns Liberte Capital Group, LLC (hereinafter "Liberte") in the case styled *Liberte Capital Group, LLC, et al. vs. James A. Capwill, et al.,* pending in the United States District Court for the Northern District of Ohio, Eastern Division, and designated as Case Number 5:99 CV 818 on the docket of said Court.

2)    Jurisdiction in this Court is proper under 28 U.S.C. § 1331 because federal questions are raised, namely: (1) the Federal Securities Act of 1933, 15 U.S.C. § 77; (2) the Federal Securities Exchange Act of 1934, 15 U.S.C. § 78; (3) the Investment Advisers Act of 1940, 15

U.S.C. §80b-14 and 15 U.S.C §80b-15; and under such related causes stemming from fraud that is systemic in the viatical industry that spans the fifty states.

3)   Jurisdiction is also proper under 28 U.S.C. § 1332, grounded on diversity of citizenship in that (a) there is complete diversity of citizenship between the parties and (b) the dollar amount in controversy, exclusive of interest and costs, exceeds that value of $75,000.00.

4)   Ancillary jurisdiction and pendent jurisdiction, now subsumed under the doctrine of supplemental jurisdiction (28 U.S.C. § 1367), are provided to this Court by virtue of the aforementioned *Liberte* case since the claims set forth in this Complaint, which are derived from the *Liberte* case, share a common nucleus of fact, comprising one central case or controversy under Article III of the United States Constitution.

5)   Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) as these claims arose in this District.

6)   Lastly, Defendant is subject to the jurisdiction of this Court, pursuant to the provisions of the Ohio Long Arm Statute, Ohio Revised Code §2307.382 *et.seq.* because Defendant transacted business with non-party to this action, Liberte, a company organized under the laws of the State of Ohio, which is domiciled in Toledo, Ohio, and the actions of Defendant that give rise to this lawsuit derive from those business transactions and connection with Liberte.

## PARTIES

7)   The Plaintiff, Victor M. Javitch is a duly appointed Receiver in the case styled *Liberte Capital Group, LLC, et al. vs. James A. Capwill, et al.* (Case No. 5:99 CV 818), pending in the United States District Court for the Northern District of Ohio, Eastern Division. Plaintiff's office and principal place of business is 1300 East Ninth Street, Fourteenth Floor, Cleveland, Ohio 44114.

8)      Defendant is, upon information and belief, a resident of the State of South Carolina, whose principal place of business is at 7950 Indica Court, N. Charleston, South Carolina 29418.

## BACKGROUND

9)      On July 15, 1999, the United States District Court for the Northern District of Ohio issued a Judgment Entry Appointing a Receiver in the aforementioned *Liberte* case (*Exhibit A*). The Court found, *inter alia*, that it is beneficial for a Receiver to be appointed forthwith as requested by the intervening plaintiffs (Liberte investors) to take and maintain exclusive and complete control and possession of all assets belonging to non-parties Viatical Escrow Services ("VES") and Capital Fund Leasing ("CFL").

10)     By subsequent Order dated June 15, 2000, the Court appointed Victor M. Javitch as Receiver to replace the original Receiver, Frederick Luper (*Exhibit B*).

11)     On August 1, 2000 the Court issued a Preliminary Injunction enjoining non-party James Capwill, the principal defendant in the *Liberte* case, from directing the activity of non-parties VES, CFL, and a number of other Capwill businesses, and ordered Capwill's interest in said businesses turned over to the Receiver  (*Exhibit C*).

12)     VES is a limited liability company, existing under the laws of the State of Ohio, with its former place of business located at 9140 Ravenna Road, Suite 2, Twinsburg, Ohio 44087. VES was in the business of providing escrow and related services to companies engaged in the investment and marketing of viatical settlements, to include disbursement of commissions to independent agents of those companies engaged in the procurement of investor funds.

13)     Liberte Capital Group, LLC [hereinafter "Liberte"] is a limited liability company organized under the laws of the State of Ohio and domiciled in Toledo, Ohio, County of Lucas. Liberte was in the business of purchasing and marketing viatical settlements.

3

14)    Viatical settlements are transactions whereby the holder of a life insurance policy (the insured, or "viator") sells that policy to an investment company. The insured/viator then receives a discounted cash settlement for insured/viator's policy while the insured/viator is still alive. In turn, the company that purchases the policy markets it as an investment opportunity to its customers who realize the benefit of the policy upon the actual death of the viator.

15)    In conducting its business Liberte sought to purchase viaticals with the intention, ostensibly, of matching investment dollars to the viaticals purchased.

16)    Liberte entered into dozens of "Representative Agreements" whereby Liberte appointed representatives to solicit individuals to invest in viatical settlements offered by Liberte. To the best of Plaintiff Victor Javitch's information and belief, the Defendant herein entered into a Representative Agreement, whereby Defendant did solicit investors to invest in viatical settlements offered by Liberte.

17)    In accordance with the "Agreements" between Liberte and Defendant, Defendant would receive commissions, upon the funding of viatical settlements, in accordance with a fee schedule that was attached to the Agreements.

18)    Defendant received substantial commission payments from the sale of Liberte Capital viaticals.

19)    Many of the viaticals that Liberte purchased in the course of its business were found to be fraudulent.

20)    Since many of the viaticals that Liberte purchased were rescinded, due to fraud in the inception and, as investment dollars were otherwise dissipated through the actions of Liberte and VES, the monetary loss to Liberte investors, who are primarily, if not exclusively, individuals, has been total.

4

21)     Many Liberte investors lost their entire life savings due to the actions of Defendant and other Liberte agents or representatives.

22)     The Court thereupon appointed a Receiver "to institute, prosecute, defend, intervene in, become party to, compromise and settle all such cases and proceedings as are in the Receiver's opinion necessary or proper to preserve or protect the Receivership property" (*Exhibit A*). By order of the Court, issued on October 16, 2000 (*Exhibit D)*, Plaintiff's duties, as Receiver, extended to the control over those viaticals that comprise a portion of the assets of Liberte. The Court found "that the Receiver, by virtue of his appointment, is needed to take control over and to be provided with the authority to dispose of and protect said polices in the best interest of the investors" (*Exhibit D*).

23)     By Order of the Court, dated October 2, 2002, the Receivers' powers were expanded. The Court stated in pertinent part: "the Court is of the view that all claims against former agents and/or brokers of Liberte and Liberte for damages in contract or tort actions arising out of claims by investors are deemed to be assets of the receivership estates and must be filed by the Receivers, if at all" (*Exhibit E*).

24)     Thus, by virtue of his position as Receiver, Plaintiff is authorized (1) to recover the assets of VES and CFL wherever they may be found and from whomever the assets of VES and CFL have been wrongfully directed, and (2) to protect those assets, in the best interest of Liberte investors.

25)     Plaintiff's action against Defendant herein is predicated on and consistent with Federal Court Orders and directed toward the recovery of and preservation of Receivership property for the ultimate benefit of Liberte investors. To that end and in accordance with the

5

Plaintiff's duties, in July, 2003, Plaintiff did send a demand notice to Defendant demanding the return of Defendant's payments (commissions).

26) The specific dollar amounts owed Plaintiff were set forth in the July, 2003 demand notice. In that demand notice, Plaintiff also set forth that the disbursement of commissions to the Defendant was wrongful and demanded the return of the commissions to the Plaintiff for the benefit of the Receivership Estate.

27) Defendant never responded to Plaintiff's notice.

28) To the best of Plaintiff's information and belief Defendant received a total of $28,732.97 in wrongful commissions as an agent for Liberte.

29) Accordingly, Plaintiff did commence this cause of action against Defendant. Plaintiff seeks, *inter alia*, the return of the wrongful payments that Defendant received, for the benefit of the defrauded Liberte investors whose investments were lost due to the actions of Defendant.

## COUNT ONE
## VIOLATION OF THE SECURITIES ACT OF 1933 §§5, 11 AND 12, 15 U.S.C. §77

30) The Plaintiff hereby incorporates the allegations contained in Paragraphs One (1) through Twenty-Nine (29) of the Complaint.

31) The viatical settlements, as hereinabove described, are "securities" under the Federal Securities Act of 1933, § 12, 15 U.S.C. § 77 *et. seq.* because (1) the investor invests money with the expectation of profit; (2) there is a pooling of the investor's monetary resources with the monetary resources of other investors in order to purchase the entire viatical; (3) there is a sharing of profits or a sharing of losses among the investors; and (4) the realization of a profit or loss results solely from the efforts of others, which is to say, the investor/purchaser exercises absolutely no control over the management of the investment.

6

32) Viatical settlements are, more specifically, securities in the form of "investment contracts." An investment contract is a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led reasonably to expect to share in the profits generated solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise.

33) The test for an investment contract contains the following three prongs: (1) an investment of money with the expectation of profit, (2) in a common enterprise, (3) solely from the efforts of others. The viatical settlements in which Liberte investors invested their monies satisfy the test for investment contracts. Viatical settlements are therefore securities that come under the purview of the Federal Securities Act of 1933.

34) Further, the viatical settlement contracts were not registered. This is a violation of the Federal Securities Act of 1933.

35) Because the viatical settlements were not registered, pursuant to the Federal Securities Act of 1933 and, based on the facts and circumstances as alleged herein, Plaintiff has a right to such damage recovery as permitted under, pursuant to and consistent with the Federal Securities Act of 1933, and this includes the consideration paid by the Liberte investors.

36) In particular Defendant failed directly to make the appropriate disclosures and to deliver the appropriate information concerning viatical settlements to investors, which would have enabled the investors to make informed judgments as to whether to invest in the viatical settlements that Liberte was offering.

37) Further, Defendant directly participated in and aided the Seller Liberte, by advising investors to invest in such viatical settlements with Liberte through material misrepresentations

7

and omissions as to the safety of such investments. In particular and to the extent that "non-conforming" viaticals were marketed to investors, Defendant failed to alert investors to the inherent risks and dangers attending investments in such "non-conforming" viaticals, where risk to investment is magnified exponentially. Defendant actively sought to entice naïve investors to place their monies in "non-conforming" policies. Such omissions and misrepresentations confounded and confused Liberte investors and caused them to invest their monies, when they otherwise would not have done so.

        (a)    A non-conforming viatical settlement is an insurance policy that has not passed the period of contestability, which is a period of time during which the insurance company that issued the policy may contest a claim made by a beneficiary and avoid a payout.

        (b)    While the investor can purchase a "non-conforming" viatical settlement at a deep discount, the attendant risk of loss to the investor is astronomical.

38)    Through Defendant's misrepresentations and omissions, many Liberte investors invested their entire life savings in a highly risky venture, with little hope of return of either profit or principal.

39)    Compounding the fraud, Defendant failed to confirm that the investment dollars, which Defendant brought into Liberte, were, in fact, "matched" to viaticals. Defendant also failed to confirm that, if investment dollars were matched to viatical settlements, the viatical settlements offered for purchase by Liberte were valid security instruments that were procured without fraud and that the viaticals were registered as securities, as required by the Securities Act of 1933.

40)    Through Defendant's failure to confirm that the viaticals that Liberte offered as investment vehicles were valid instruments that were procured without fraud, Defendant caused

Liberte investors to lose the totality of their investments which, in many cases, amounted, also, to the loss of Liberte investors' entire life savings.

41)    Defendant, however, profited from the harm Defendant caused Liberte investors because Defendant received commissions after the funding of the viatical policy, for Defendant kept all commissions received, regardless of whether the investment dollars had been matched to viaticals and regardless of whether the investment dollars had been matched to replacement viaticals, in the event that particular viaticals were rescinded by the issuers because of fraud in the inception.

42)    Through acts of omission, Defendant failed to disclose and to explain to Liberte investors the intricacies associated with the investment in viaticals, which make them unsuitable as primary investment instruments for many investors. The attendant risks include:

(a)    Risks associated with acts of negligence and/or criminal fraudulent conduct by the parties in whose name the policies were procured and by the parties who sold the policies to Liberte.

(b)    Risks of illiquidity in obtaining any return on the viatical settlements.

(c)    Risks associated with the possibility that policies would lapse as a result of the exhaustion of reserves required to pay premiums in the event that the insured lived longer than expected, in which event the investors would be required to contribute additional monies to pay premiums in order to prevent the policies from lapsing.

(d)    Risks that the insurance company would contest the payment of the proceeds of the policy if the insured died during the period of contestability by the company.

(e)    Risks that the insurance company might become insolvent.

(f)    Risks associated with the lack of market integrity and regulation of viaticals.

(g)    Risks associated with inadequate disclosure of the viatical settlements in the offering material.

9

43)     Further, Defendant's representations to the investors were made with actual malice or reckless disregard for the truth. There were:

      (a)    Material misrepresentations and omissions as to the safety of the investment in viaticals.

      (b)    Material misrepresentations and omissions made with knowledge and therefore, malice, as to their falsity.

      (c)    Reliance by the investors on the misrepresentations and omissions of Defendant to the detriment of the investors.

44)     An investor harmed by prospectus fraud, under the Federal Securities Act of 1933, specifically under § 12(2) of the Act, 15 U.S.C. §77l, is permitted to recover the consideration paid for such security, together with prejudgment interest and attorney's fees. And, because Defendant's conduct was willful, fraudulent, malicious and oppressive, the Plaintiff is also entitled to punitive damages.

45)     Wherefore, Plaintiff is entitled to recover $179,581.07, which represents the total dollar amount that Defendant's clients, Liberte Capital investors, paid for such securities; plus prejudgment interest, at the rate of 10% per annum, calculated from the point in time that each investor remitted monies to Liberte for the purchase of a fractional interest in one or more viaticals; plus punitive damages, for willful fraudulent, malicious and oppressive conduct on the part of Defendant; plus attorney's fees.

## COUNT TWO
## VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 § 10(b) AND RULE 10b-5, 15 U.S.C. § 78j(b)

46)     The Plaintiff hereby incorporates the allegations contained in Paragraphs One (1) through Forty-Five (45) of the Complaint.

47)     Defendant's acts of misrepresentation and omission in connection with the sale of viatical settlements (securities) were calculated to deceive investors through guarantees of high rates of return on investors' investments with an absence of risk.

48)     Further, Defendant failed to perform any meaningful due diligence to ascertain that investors' investment dollars would even be placed in viaticals and, if the investment dollars happened to be placed in viaticals, Defendant failed to perform any meaningful due diligence to ascertain that the policies, in which investment dollars were allocated, were policies that were not tainted by fraud in the procurement, which, if tainted by fraud, would then be subject to rescission by the insurance carrier.

49)     Defendant's conduct in securing investment dollars from unsuspecting investors clearly illustrates a callous and reckless disregard for the safety of the investors' investment.

50)     Defendant's sole concern was whether Defendant would receive his commissions irrespective of potential harm to the investors whose investment dollars Defendant solicited.

51)     Defendant never ascertained whether viatical settlements would be a suitable investment for particular investors, thereby wrongly assuming that every investor could absorb a total loss on his investment.

52)     Equally as egregious, Defendant never sought to ascertain whether the investors' investment dollars were, in fact, placed in a viatical. This highly unreasonable conduct illustrates an extreme departure from the standards of ordinary care that Defendant owed to those investors whose investment dollars Defendant sought to acquire through the solicitation of highly dubious securities. Consequently, the investors who had invested their monies through the misrepresentations and omissions of Defendant lost their investments, which, in many cases, amounted to the total loss of their life savings.

11

53) Defendant took part in an elaborate ponzi scheme, calculated to bilk investors of funds by preying on their desire for tremendous profit within a relatively short period of time with little or no risk.

54) The advertising brochure of Liberte, which Defendant utilized in order to hoodwink and seduce unsuspecting and unsophisticated investors, exemplifies a type of device, scheme or artifice that operates as a fraud or deceit on the investor.

55) The Liberte investors relied on Defendant's material misstatements, misrepresentations and omissions and suffered a substantial loss of money as a result.

56) Plaintiff is entitled to damages, prejudgment interest, punitive damages and attorney's fees for Defendant's violation of the Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b).

57) Wherefore, Plaintiff is entitled to $179,581.07, which represents the total dollar amount that Defendant's clients, Liberte Capital investors, paid for such securities, plus prejudgment interest at the rate of 10% per annum, calculated from the point in time that each investor remitted monies to Liberte for the purchase of a fractional interest in one or more policies; plus punitive damages, for willful, fraudulent, malicious and oppressive conduct on the part of Defendant.

## COUNT THREE
## COMMON LAW FRAUD

58) The Plaintiff hereby incorporates the allegations contained in Paragraphs One (1) through Fifty-Seven (57) of the Complaint.

59) Defendant has made false representations to investors as to the relative safety of investments in viatical settlements and such false representations were made either with

knowledge of the inherent danger in investing dollars in viatical settlements or with utter disregard and recklessness as to the truth or falsity pertaining to the safety of viatical settlements.

60)     Defendant made such false representations to investors with the intent of deceiving investors into the false belief that investments in viatical settlements are essentially risk free investments that provide a high rate of return.

61)     Investors could justifiably rely upon the false representations of Defendant since Defendant would be reasonably perceived to be an expert in the area of investments in viatical settlements or, at least, Defendant would be perceived as highly knowledgeable about investments in viatical settlements. Defendant occupied a position of trust and influence over the investors whom he defrauded who were unsophisticated investors.

62)     Investors did, in fact, lose substantial sums of money by investing in viatical settlements, predicated on the false representations of Defendant.

63)     Defendant's actions demonstrate malice, aggravated or egregious fraud, oppression and insult.

64)     Wherefore, Plaintiff is therefore entitled to an award of damages consisting of the dollar amounts lost by investors who had relied on Defendant's representations $179,581.07 plus prejudgment interest calculated from the point in time that each investor remitted money to Liberte for the purchase of fractional interests in one or more policies, and Plaintiff is also entitled to an award of punitive damages, as a result of Defendant's egregious conduct in marketing viatical settlements, as a representative of Liberte.

## COUNT FOUR
## FRAUD IN THE INDUCEMENT

65)     The Plaintiff hereby incorporates the allegations contained in Paragraphs One (1) through Sixty-Four (64) of the Complaint.

13

66)    Defendant entered into numerous sales agreements with Liberte Capital investors wherein Defendant, through coercion, manipulation, fraudulent representations, omissions, evasiveness, misrepresentations and contrivance caused investors to invest their monies in highly risky and fraudulent viatical settlements that were offered for sale by Liberte, when these individual otherwise would not have done so.

67)    Because investors, to whom interests in Liberte viaticals were offered for investment, were unsophisticated investors, who, further, were deluded by Defendant into believing that viaticals are safe instruments in which to invest their monies, these Liberte investors did not and could not negotiate fair terms for purchasing viaticals; they could not make informed judgments as to the safety of viaticals as investment instruments; and they could not fairly determine whether these investment instruments were proper, appropriate and suitable investment instruments for themselves based on such factors as age and financial circumstances.

68)    Defendant took unfair advantage of the Liberte investors' naiveté and desire for profit, falsely promising to these investors that they would double their investment dollars with little or no risk of loss through investment in Liberte's viaticals.

69)    Wherefore, the Plaintiff Receiver is entitled to an award of damages consisting of the dollar amounts lost by investors who had relied on Defendant's representations, $179,581.07 plus prejudgment interest, calculated from the point in time that each investor remitted money to Liberte, for the purchase of a fractional interest in one or more policies.  The Plaintiff is also entitled to an award of damages consisting of the investment returns that the Liberte investors were promised, equal to 100% of their original investment, which is $179,581.07, as a result of Defendant's particularly egregious conduct in marketing viatical settlements of Liberte.  In the alternative, Plaintiff prays this Court to rescind the sales agreements that Defendant entered into

14

with his client investors thereby restoring Plaintiff, on behalf of the Liberte investors, to their position prior to the payment and loss of their monies through the egregious conduct on the part of Defendant.

## COUNT FIVE
## BREACH OF CONTRACT

70)     The Plaintiff hereby incorporates the allegations contained in Paragraphs One (1) through Sixty-Nine (69) of the Complaint.

71)     Defendant entered into many sales agreements, whereby Defendant promised to place each investor's investment dollars in a viatical settlement, which would yield 100% profit to each investor upon the death of the viator.

72)     Each and every Liberte investor who had executed his sales agreement, fulfilled his obligations under the agreement, by presentment of the requisite monies to Defendant for placement of the investor's monies into a viatical settlement.

73)     The Defendant breached each and every agreement, for the monies of each investor were either never matched to a viatical or were matched to a viatical that was determined to be fraudulent in the inception and therefore worthless.

74)     The Defendant further breached each and every agreement by promoting Liberte's viatical settlements illegally, for the viatical settlements were never registered with the S.E.C. in violation of Federal Securities laws.

75)     The Liberte investors suffered catastrophic losses as the investment instruments in which they had invested their monies either never existed or were rendered worthless because the investment instruments were issued through fraud and were never registered as required under the applicable Federal Securities laws. Thus, the investors could not feasibly realize a profit on

15

their investment dollars and, as well, lost in total, the original consideration paid for the instruments.

76)     Wherefore, the Plaintiff Receiver is entitled to an award of damages consisting of the dollar amounts lost by investors who had relied on Defendant's representations, $179,581.07 plus prejudgment interest, calculated from the point in time that each investor remitted money to Defendant for the purchase of a fractional interest in one or more policies. The Plaintiff is also entitled to an award of the investment returns that the Liberte investors were promised, equal to 100% of their original investment, which is $179,581.07, as a result of Defendant's particularly egregious conduct in marketing the viatical settlements of Liberte. In the alternative, Plaintiff prays this Court to rescind the sales agreements that Defendant entered into with his client investors, thereby restoring Plaintiff, on behalf of the Liberte investors, to their position prior to the payment and loss of their monies through the egregious conduct of Defendant.

## COUNT SIX
## UNJUST ENRICHMENT

77)     The Plaintiff hereby incorporates the allegations contained in Paragraphs One (1) through Seventy-Six (76) of the Complaint.

78)     Defendant has received $28,732.97 in commissions from Liberte.

79)     The commissions are recoverable by the Plaintiff for the reason that the investment dollars that Defendant brought into Liberte Capital were either never matched to a viatical settlement policy or were matched to policies that were rescinded by the respective insurance companies due to fraud in the inception, and the investment dollars were not, thereafter, matched to a replacement policy. The investor's funds procured by Defendant were, therefore, never placed in any legitimate investment.

16

80)     Hence, Liberte caused percentage commissions to be paid to Defendant that were applied to valueless investments, or never applied at all.

81)     Defendant has been unjustly enriched by the retention of commissions received, as a percentage of ineffectual and unapplied investment dollars.

82)     As a direct and proximate result of the Defendant's wrongful retention of the commissions, the Plaintiff has been damaged in the amount of Defendant's commissions and Plaintiff is also entitled to the costs of bringing this action.

83)     Wherefore, Plaintiff is entitled to $28,732.97, which is the dollar amount Defendant received in commissions, and Plaintiff is also entitled to prejudgment interest at the rate of 10% per annum, calculated from the point in time that Defendant received monies from VES, comprising Defendant's commissions.

## COUNT SEVEN
## CIVIL CONVERSION

84)     The Plaintiff hereby incorporates the allegations contained in Paragraphs One (1) through Eighty-Three (83) of the Complaint.

85)     The wrongful retention of commissions disbursed to Defendant, and kept by Defendant, constitutes a civil conversion of funds.

86)     As a direct and proximate result of the Defendant's conduct, the Plaintiff Receiver has been damaged by $28,732.97.

87)     Wherefore, Plaintiff is entitled to $28,732.97, which is the dollar amount Defendant received in wrongfully retained commissions. Plaintiff is also entitled to prejudgment interest at the rate of 10% per annum, calculated from the point in time that Defendant received monies from VES, comprising Defendant's commissions. And, Plaintiff is entitled to the costs of bringing this action.

17

## COUNT EIGHT
## BREACH OF FIDUCIARY DUTY AND/OR BREACH OF COVENANT TO ACT IN GOOD FAITH AND BREACH OF COVENANT OF FAIR DEALING

88)     The Plaintiff hereby incorporates the allegations contained in Paragraphs One (1) through Eighty-Seven (87) of the Complaint.

89)     Defendant was acting and purporting to act as an investment counselor to Liberte investors.

90)     Defendant was explicitly or implicitly holding himself out as an expert in the field of securities, namely in the field of viatical settlements, once Defendant solicited monies from investors for the purchase of fractional interests in viaticals.

91)     Defendant expressly or implicitly represented to Liberte investors that Defendant possessed professional knowledge, training and experience with respect to viatical settlements.

92)     Defendant induced Liberte investors to place trust in Defendant's judgment as to the suitability of investments in viaticals, when the viaticals were, in fact, unsuitable and unsound investment instruments for many investors, many of whom were senior citizens who could ill afford to lose any money and who, in fact, did lose substantial monies which, in several instances, amounted to the loss of investors' life savings.

93)     Defendant induced Liberte investors to place trust in Defendant's judgment as to the safety of the investments when in fact the investments were unsafe.

94)     Defendant had an obligation to act in good faith and in the best interests of the investors whose investment dollars Defendant had solicited, but Defendant failed to act in good faith and Defendant's actions promoted fraud and Defendant's actions demonstrate a callous disregard for the financial well-being of the investors whose investment dollars Defendant solicited.

95)     Liberte investors relied on the investment advice of Defendant to their detriment.

96)     It was Defendant's legal and professional duty to Liberte investors to conduct a full and thorough investigation of the viatical settlement instruments that were offered for investment by Liberte:

      (a) to confirm that the viatical settlements, which were offered for investment purposes, were registered as required under Federal Securities laws.

      (b) to confirm that the investment dollars that were brought into Liberte, upon which Defendant's commissions were based, were, in fact, matched to policies.

      (c) to confirm that the viatical settlement instruments that were offered for purchase were valid policies, procured without fraud.

97)     Defendant failed to perform his legal and professional duties and, as a result, the Liberte investors, whose investment dollars the Defendant solicited, lost every dollar of their investment.

98)     Defendant's breach of his professional responsibilities directly and proximately caused the monetary losses sustained by the Liberte investors.

99)     Wherefore, Plaintiff is entitled to $28,732.97, which is the dollar amount Defendant received in commissions. Plaintiff is also entitled to prejudgment interest at the rate of 10% per annum, calculated from the point in time that Defendant received his commissions. And, Plaintiff is entitled to the costs of bringing this action.

## COUNT NINE
## INTENTIONAL OR NEGLIGENT MISREPRESENTATION

100)    The Plaintiff hereby incorporates the allegations contained in Paragraphs One (1) through Ninety-Nine (99) of the Complaint.

101)    The false representations that Defendant made to Liberte investors occurred during the normal course of Defendant's business activities.

102)    The Defendant intentionally, negligently or with reckless disregard for the truth did represent to Liberte investors, whose business Defendant actively solicited, that viatical settlements were safe investments, when Defendant knew or should have known that viatical settlements are unsafe investment instruments and clearly unsuitable investment instruments for many investors.

103)    The Defendant failed altogether to exercise reasonable care or competence in obtaining information on the risk factors associated with viatical settlements as investment instruments when Defendant solicited the business of Liberte investors.

104)    The Defendant failed altogether to exercise reasonable care or competence in obtaining information as to the availability and the validity of specific viatical settlements offered by Liberte for investment when he solicited the business of Liberte investors.

105)    The Defendant failed altogether to exercise reasonable care or competence in communicating, to investors, his opinion as to the safety of viatical settlements as investment vehicles generally and in communicating the safety and validity of the particular viatical settlements that were being offered by Liberte for investment purposes.

106)    The Defendant failed altogether to exercise reasonable care or competence in communicating, to investors, Defendant's opinion as to the reliability and acumen of Liberte as a source for those viatical settlements, since Liberte was responsible for managing those securities.

107)    The Defendant failed altogether to exercise reasonable care or competence by failing to determine whether Liberte did, in fact, have viatical settlements available for investment, when Defendant solicited investment dollars.

108)    Defendant failed altogether to exercise reasonable care or competence once Defendant failed to determine whether Liberte had the necessary financial resources to keep the

20

viaticals in force through the payment of premiums to the respective carriers, for the life of the viator.

109) Through the misrepresentations and omissions of the Defendant, Liberte investors were led to believe, falsely: (1) that viatical settlements are safe investment instruments that would produce a substantial monetary return in a relatively short period of time, when viatical settlements are not safe investment instruments; (2) that Liberte did in fact possess viatical settlements for investment purposes; (3) that the viatical settlements were valid and free of fraud in the procurement when, in fact, Liberte often did not have sufficient viaticals available for investment and those that were available were tainted by fraud and therefore subject to rescission; and (4) that Liberte had the wherewithal to manage the viatical settlements when, in fact, Liberte was corrupt and when, in fact, Liberte utilized the services of disreputable people who stole or otherwise dissipated the monies of Liberte investors and when Liberte engaged disreputable people to do the escrow work and to preserve and protect the monetary investments of Liberte investors.

110) Liberte investors suffered substantial pecuniary loss by justifiably relying on the representations of Defendant as to the safety of viatical settlements for investment and, as to the availability and validity of those viatical settlements that were offered by Liberte for investment.

111) Liberte investors also suffered substantial pecuniary loss through the lack of information concerning Liberte's integrity. Defendant had a duty to inform the investors whom Defendant had solicited as to the reputation of Liberte, as well as informing investors, whom Defendant had solicited, as to the suitability of viaticals as investment vehicles for those investors.

21

112)   The misrepresentations and omissions of Defendant left Liberte investors to draw improper and inappropriate conclusions concerning the safety of their investment dollars in viatical settlements and in drawing improper and inappropriate conclusions as to the ability of and integrity of a third party, Liberte, in managing viatical portfolios.

113)   Wherefore, Plaintiff is entitled to $28,732.97, which is the dollar amount Defendant received in commissions. Plaintiff is also entitled to prejudgment interest at the rate of 10% per annum, calculated from the point in time that Defendant received his commissions. And, Plaintiff is entitled to the costs of bringing this action.

## COUNT TEN
## VIOLATION OF § 215 OF THE INVESTMENT ADVISERS ACT OF 1940, 15 U.S.C. §§ 80b-3, 80b-4, 80b-6 AND 80b-15

114)   The Plaintiff hereby incorporates the allegations contained in Paragraphs One (1) through One Hundred and Thirteen (113) of the Complaint.

115)   Defendant was an investment advisor within the meaning of the Investment Advisers Act of 1940 because he solicited investors to purchase interests in Liberte Capital viatical settlements, which are securities within the meaning of the Federal Securities Act of 1933 and the Federal Securities Exchange Act of 1934; and Defendant engaged in the business of advising his client investors both directly and through literature as to the value of securities and/or as to the advisability of investing in or purchasing interests in Liberte Capital's viatical settlements.

116)   Defendant did in fact sell interests in Liberte Capital viatical settlements to investors for which he received monetary compensation.

117)   Defendant never filed his application for registration with the Securities Exchange Commission, informing the Commission of the nature of Defendant's business as an investment

advisor, the manner in which Defendant is compensated as an investment advisor, and such other matters that the Commission prescribes as necessary or appropriate in the public interest and for the protection of his investors.

118) As an agent for Liberte Capital, Defendant made use of the mails in connection with his business as an investment advisor in order to effectuate or to attempt to effectuate sales of interests in Liberte Capital viaticals.

119) Defendant failed to keep records of his investment business, as required by the Securities and Exchange Commission, whereby the Commission might examine Defendant's activities as an investment advisor, as deemed necessary in the public interest and for the protection of Defendant's client investors.

120) Defendant failed to establish, maintain and enforce written policies and procedures designed to prevent misuse of the rules and regulations promulgated by the Securities and Exchange Commissions.

121) Defendant effectuated the fraud and deceit perpetrated by Liberte Capital on investors by engaging in transactions that resulted in the purchase, by Defendant's client investors, of extremely risky or worthless securities.

122) Defendant engaged in acts, practices and transactions which were fraudulent, deceptive and manipulative because Defendant sold interests in unregistered securities which were often, if not invariably, fraudulent in the procurement and therefore worthless as investment instruments; and through the purchase of extremely risky or worthless securities, in the form of viatical settlements, Defendant's client investors suffered the total loss of their investment dollars.

23

123) The contracts for the purchase of Liberte Capital viatical settlements and the literature utilized by Defendant to effectuate sales of Liberte Capital viaticals are in the nature of devices, schemes or artifices designed to provide Liberte Capital and Defendant with money, and to provide Defendant with the impetus to further exploit naïve investors and cause them to invest their monies in worthless or highly dubious and risky security instruments, when these investors could ill afford to risk the loss of their monies and would not have invested their monies in such securities if Defendant had lawfully disclosed the risks associated with investment in interests in Liberte Capital viatical settlement instruments.

124) Such artifices and devices as sales agreements and literature, promoting the sale of Liberte's risky securities, were utilized in interstate commerce because Liberte's agents were located throughout the United States and Liberte's contracts, authorizing agents, such as Defendant herein, to sell interests in Liberte Capital's viaticals, and the actual contracts of sale, moved in interstate commerce, as did Liberte's manipulative advertising material, which Defendant utilized in procuring investment dollars for the purchase of interests in Liberte Capital viaticals.

125) The transactions of sale of interests in Liberte Capital viaticals that were executed by Defendant's client investors were the result of misrepresentations and omissions on the part of Defendant, which misrepresentations and omissions constitute and involve fraudulent, deceptive and manipulative practices engaged in by Defendant in the course of his business, and which adversely affected Defendant's client investors.

126) Relying on Defendant's investment advice, Defendant's client investors were the subjects of fraudulent, deceptive and manipulative business practices of Defendant.

24

127) As a result of Defendant's fraudulent, deceptive and manipulative business practices as directed against Defendant's client investors, those investors lost all or virtually all of their investment dollars.

128) Wherefore, Plaintiff is entitled to rescission of each and every contract of sale of interests in Liberte Capital viaticals, as between Liberte Capital and Defendant's client investors, which Defendant was instrumental in effectuating; and Plaintiff is entitled to restitution of all consideration paid by Defendant's client investors for interests in Liberte Capital viaticals, which must be remitted to the Receiver; and Plaintiff is entitled to restitution of the consideration paid to Defendant pursuant to Defendant's agency agreement, authorizing Defendant to solicit investment dollars for purchase of interests in Liberte Capital's viatical settlement instruments.

WHEREFORE, the Plaintiff, Victor M. Javitch, in his capacity as Federal Court appointed Receiver, prays this Court grant judgment against the Defendant pursuant to Counts One through Ten as follows.

1. As to Counts One and Two, an award for the consideration paid by those Liberte investors whose business the Defendant solicited, $179,581.07, plus prejudgment interest at the rate of 10%, calculated from the point in time that the investors invested their monies in the viaticals, plus an award of punitive damages against Defendant.

2. As to Count Three an award of damages, consisting of the Liberte investors' lost investments, $179,581.07, plus prejudgment interest, calculated from the point in time that the investors invested their monies in the viaticals, plus punitive damages.

3. As to Counts Four and Five an award of damages, consisting of the Liberte investors lost investments, $179,581.07, plus prejudgment interest calculated from the point in time that the investors invested their monies in the viaticals, plus an additional $179,581.07, which constitutes the return that the investors were promised, for a total of $359,162.14 in damages.

4. As to Counts Six through Nine, an award of $28,732.97, consisting of and representing the dollar amount in commissions wrongfully obtained and wrongfully retained by the Defendant; plus prejudgment interest at the rate of

10% per annum, calculated from the point in time that Defendant received monies from Liberte, comprising Defendant's commissions.

5. As to Count Ten, rescission of each and every contract of sale of interests in Liberte Capital viaticals settlements and restitution of the consideration that each investor paid for interests in Liberte Capital viaticals; and restitution of the consideration paid to Defendant in respect to the sale of interests in Liberte Capital viaticals settlements, namely, the commissions that Defendant received from the sale of interests in Liberte Capital viaticals settlements.

6. Costs of this action, including attorney's fees.

7. For such other and further relief as the Court deems appropriate.

Respectfully submitted,

ROGER J. KATZ (0037670) for Party Plaintiff,
Victor M. Javitch, Court Appointed Receiver
JAVITCH, BLOCK & RATHBONE
1300 East Ninth Street, 14TH Floor
Cleveland, Ohio 44114-1503
(216) 623-0000 Telephone
(216) 623-0190 Facsimile
rkatz@JBandR.com